2002 WY 117

**Brian Keith HOLLOMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 00–202.

Supreme Court of Wyoming.

July 31, 2002.

Sylvia Lee Hackl, State Public Defender; Marion Yoder, Senior Assistant Public Defender; Diane Courselle, Faculty Director, and Dwight H. Mann, Student Intern, of the Defender Aid Program, Representing Appellant. Argument by Mr. Mann.

Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; T. Alan Elrod, Assistant Attorney General, Representing Appellee. Argument by Mr. Elrod.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶1] In this appeal, the trial court failed to give a requested self-defense instruction to the jury during trial for one count of first degree premeditated murder. Our jurisprudence has established that the defenses of self-defense and accident are mutually exclusive when applied to the shooting death of a victim. However, in this particular case, Appellant Brian Keith Holloman claimed that his act of self-defense by striking blows against one victim resulted in the accidental falling death of a third party, and he was, therefore, entitled to his requested self-defense-against-assault instruction. Our review has determined that Holloman's defense theory is recognized by the common law, the self-defense elements are supported by his testimony, and are corroborated by physical evidence. We, therefore, hold that it was reversible error to fail to instruct the jury on his self-defense theory. This ruling is dispositive, and we do not consider Holloman's issues regarding prosecutorial misconduct.

[¶2] Reversed and remanded for new trial.

**ISSUES**

[¶3] Holloman presents these issues for our review:

I. Did the trial court commit reversible error by improperly refusing to give a jury instruction on self-defense where Mr. Holloman offered an instruction sufficient to apprise the court of his theory of the case and there was competent evidence presented to support that theory?

II. Was Mr. Holloman deprived of his rights to due process and a fair trial by the prosecution's pervasive and varied misconduct, including (1) violating discovery rules (one violation constitutes independent reversible error), (2) ignoring exclusionary rulings by the court, (3) engaging in various forms of improper questioning, (4) eliciting a comment on Mr. Holloman's exercise of his right to silence (which constitutes independent reversible error), (5) encouraging the jury to convict because of community bias and prejudice, and (6) making highly inflammatory and improper comments in summation (the combined summation comments constitute independent reversible error as well)?

The State rephrases the issues:

I. Was appellant entitled to a self-defense instruction where his defense at trial was that he killed his victim by accident?

II. Was there prosecutorial misconduct in appellant's trial?

## FACTS

[¶ 4] Holloman was a transient who arrived in Cheyenne on July 24, 1999, and planned to continue to El Paso, Texas. An admitted alcoholic, Holloman spent that day and night drinking with other men, and, sometime later that night, Holloman was attacked and slashed across the face. He received medical attention for his wound, which required a double row of stitches. The wound was described as a cut from above his right eye that went down his face, through his ear and into his neck. Holloman spent that night at a detoxification center.

[¶ 5] The next morning, Holloman and another man who had also spent the night at the detoxification center joined Herman Thunder Hawk and Douglas Johnson at a liquor store and all bought beer and vodka. The four then went to Thunder Hawk's apartment at the Idleman Hotel in downtown Cheyenne. The four drank all of the alcohol they had bought, drank another half-gallon of vodka they bought in mid-afternoon and soon all passed out. The men awoke sometime that evening. At 7:13 p.m., local police were dispatched to the hotel following a report that a man was hanging out of a window of the Idleman Hotel.

[¶ 6] Police arrived within two minutes and observed a man hanging from the window and, within minutes, fall to his death. That man was Douglas Johnson. Before Johnson fell, the police observed that Johnson's thighs were over the sash of the window and the rest of his body was hanging down facing the building. One police officer stated that he "fell" out of the window, and that he did not see anybody shove him out of the window. Police entered the building as Thunder Hawk and Holloman were attempting to exit it. Both were placed on the ground and handcuffed. The two began yelling at each other, and the officer in charge told the other officers not to ask them any questions and to write down everything that the two said to each other. Thunder Hawk accused Holloman of killing his friend, and Holloman made statements that he had killed him. Holloman's statements were later admitted against him at trial.

[¶ 7] Holloman was tried for first degree murder. Under the State's theory of the case, Holloman pushed Johnson out of the window and he hung suspended from the window for some minutes with his thighs on the window sash and one arm locked onto the window. Johnson was able to pull himself back in to where his waist was on the sash, and then Holloman forcefully ejected him out through the window causing him to fall to his death. Additionally, Thunder Hawk testified that he emerged from the bathroom and saw Holloman shoving Johnson out of the window. Thunder Hawk stated that he grabbed Johnson by the calves of his legs and held on to him. Holloman hit Thunder Hawk in the face numerous times causing Thunder Hawk to lose his hold. The State argued that Holloman did not lose his grip on Johnson but, instead, sent him out of the window with force to his death.

[¶ 8] Several witnesses on the street observed Johnson hanging out of the window before he fell to his death. Although all agreed that someone was holding onto Johnson as he hung upside down out of the window, the stories conflicted as to whether he fell or was shoved out of the window. The time period between when Johnson was first sent out of the window and fell to his death was between five and ten minutes.

[¶ 9] In opening arguments, the defense explained its theory of the case. After Holloman awoke, he was struck in the face:

> And so when he gets attacked, he does what anyone would do under the circumstances; he defends himself. He whips around, but you know what, he doesn't see Douglas Johnson. As soon as he gets to where he can see, he sees Herman Thunder Hawk, and that's all he sees. He does not even know that Douglas Johnson had gone out the window. He still thinks it's Herman Thunder Hawk that just attacked him.

> So he does start hitting Herman Thunder Hawk. He doesn't even realize that Douglas Johnson is out of the window until he hears Herman Thunder Hawk say, "Oh, shit, he fell," and Herman Thunder Hawk takes off.

> \* \* \* \*

> Now we're not trying to say that in self-defense, Brian threw Douglas Johnson out a window. We are trying to say that he was defending himself, and in the course of defending himself, a tragic accident happened, but that's all. It was a tragic accident, and not a crime.

[¶ 10] During trial, Holloman testified that he awoke to loud music on a tape player. Holloman got up and crossed to the tape player and turned it off. He stated that Thunder Hawk was in the room and seated on a couch next to Johnson, and as Holloman turned off the tape player, he was struck hard in his face on the wound with stitches. The blow knocked him into a wall and the intense pain blinded him for some moments, and he felt as if he might lose consciousness. He reacted by spinning around and scuffling and when he was able to focus his sight, he saw Thunder Hawk and hit him in the face.

Holloman: ... I thought he had been the one that hit me. I was reacting. It was—

Defense: Happened fast.

Holloman: Seemed like just like that (indicating).

Defense: Where was Mr. Johnson?

Holloman: I didn't know.

Defense: You had no idea?

Holloman: All I seen was Thunder Hawk.

Defense: You were focused on him?

Holloman: That's all I seen. At the moment, him and I were the only two there.

Defense: At some point did you realize where Mr. Johnson was?

Holloman: I didn't know that—Thunder Hawk was hollering something at me. He was yelling something, but I—with the stereo behind me not quite on station, and him hollering, plus me being woozy from being hit so hard, I didn't know what he was saying. I just know that he was yelling at me, and I just attacked.

Defense: When did you realize where Mr. Johnson was?

Holloman: Then he said, "Oh, shit, he fell," and I didn't know he was out the window. That's—that's when I realized that the boy had fell.

[¶ 11] Photographs of Holloman's face and witness testimony that Holloman's face had suffered further injury corroborated Holloman's story that he was attacked that day. The defense requested a self-defense instruction, arguing that Holloman was defending himself from a perceived attack when Johnson went out of the window. The requested instruction stated:

> YOU ARE INSTRUCTED that it is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force which would appear to a reasonable person, in the same or similar

circumstances, to be necessary to prevent injury.[1]

To justify acting in self-defense, it is not necessary that the danger was real, or that the danger was impending and immediate, so long as the defendant had a reasonable cause to believe and did believe these facts. If these two requirements are met, acting in self-defense is justified even though there is no intention on the part of the other person to do the defendant harm, nor any impending and immediate danger, nor the actual necessity for acting in self-defense.[2]

[¶ 12]   During the jury instruction conference in chambers, defense counsel argued for a self-defense instruction:

The evidence that was presented from Brian Holloman was that he was attacked. He does not know who did it, but he was attacked, and that he did defend himself. In the course of defending himself, an accident occurred, and like I said, the ultimate theory of the defendant is that this was an accidental killing, but the accidental killing was the result of self-defense, and the jury needs to be instructed that he does have the right to defend himself from an attacker whether he knows who it is or not.

He does have the right to defend himself from an attacker.

The Court: Again,[3] the defendant never said that he was attacked by the decedent or that he attacked the decedent in return. As I understand his testimony, he denied doing anything to the decedent.

Defense: No. Just the fact that he—the way that he whipped around, and some of their evidence is that—correct me if I'm wrong—that he was hitting Thunder Hawk in order to make him drop Mr. Johnson, and he was not doing that in order to get

an intentional killing here.  He was doing that in self-defense because he believed that it was Thunder Hawk who had attacked him.

The Court:  But self-defense only applies to what you do to the decedent, not what you do to someone else.

Defense:  And I do understand that. There's just that—this is where—you have a situation here where that is what he was doing was defending himself.  If that is the case, then the State should be precluded from arguing that he did not have the right to defend himself against Thunder Hawk.

The Court:  In any event, I didn't see sufficient evidence here to raise a self-defense instruction.

[¶ 13]   After the court refused the self-defense instruction, the defense referred only once to an accident instruction:

Defense:  Now, do we have any kind of an instruction talking about an accident? And what I was thinking was that if you did deny the one regarding voluntary manslaughter—

The Court:  Well, the only reference I think is in your instruction defining "purposely."[4]

The defense did not offer any theory of defense instruction relating to accident.  Although Holloman presented a self-defense/accident theory of defense, the only defense-oriented instruction the jury received was an instruction that self-induced intoxication could be evidence that no specific intent was formed.  In closing argument, the defense stated:

Douglas Johnson's death was an accident.  It was a horrible, terrible accident, but it's not a crime—not a crime for which Brian Holloman is responsible.

* * * *

---

1.  This paragraph is taken verbatim from the Wyoming pattern instruction 8.09 entitled Self–Defense Against Assault.

2.  This paragraph is taken verbatim from the Wyoming pattern instruction 8.11 entitled Actual Danger Not Necessary To Claim Of Self–Defense.

3.  The trial court uses the term "again," because earlier it had refused the State's request for a

lesser included instruction on voluntary manslaughter on grounds that the defendant had not testified that he knew that it was the victim who had provoked him.

4.  Instruction No. 5: "YOU ARE INSTRUCTED that "purposefully" means that the act was done intentionally or deliberately, and not accidentally."

There was a big struggle, somebody got hit, man whirled around, man goes out the window, turns around and starts punching.

[¶ 14] Holloman was convicted of first degree murder, sentenced to life imprisonment, and this appeal followed.

## DISCUSSION

### Theory of the Case Instructions

[¶ 15] Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State,* 474 P.2d 127, 129 (Wyo.1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State,* 833 P.2d 486, 490 (Wyo.1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State,* 704 P.2d 1300 (Wyo.1985). Fundamentally, the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp,* 833 P.2d at 490.

[¶ 16] As *Bouwkamp* explained, "[t]heory of defense instructions are to be derived from and address criminal defenses provided for by statute or acknowledged by this court." *Id.* It further noted "common-law defenses are retained unless otherwise provided by this act." *Id.* (quoting Wyo. Stat. Ann. § 6–1–102(b)). Additionally, this Court has discussed acceptable defenses, notably in *Keser v. State,* 706 P.2d 263, 269 (Wyo.1985).[5]

*See also* 1 Paul H. Robinson, *Criminal Law Defenses* § 21, at 70 n. 1 (1984); 1 Charles E. Torcia, *Wharton's Criminal Law* § 39 (15th ed.1993).

[¶ 17] Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State,* 736 P.2d 739, 745 (Wyo. 1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State,* 966 P.2d 941, 944 (Wyo. 1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.* The refusal to allow an instruction requested by the defendant when due process requires the defendant's instruction be given is reversible error per se. *Id.*

[¶ 18] In this case, the defense presented a self-defense-against-assault instruction which was refused by the trial court. In its appellee brief, the State urges that the trial court properly refused this instruction, noting the following: (1) Holloman's testimony was that he did not intentionally throw Johnson out of the window; (2) defense counsel stated that it was not claiming self-defense, but accident; (3) because Holloman's theory of defense was accident, Wyoming law states that self-defense and accident are incompatible defenses and, therefore, mutually exclusive; and finally, (4) no evidence supported a self-defense instruction. The State primarily relies upon *Goodman v. State,* 573 P.2d 400

---

5. "Many defenses to criminal actions are not specifically contained within the specific criminal statute.

'Possible bars to conviction include alcoholism, alibi, amnesia, authority to maintain order and safety, brainwashing, chromosomal abnormality, consent, convulsion, custodial authority, defense of habitation, defense of others, defense of property, de minimis infraction, diplomatic immunity, domestic (or special) responsibility, double jeopardy, duress, entrapment, executive immunity, extreme emotional disturbance, hypnotism, immaturity, impaired consciousness, impossibility, incompetency, insanity, intoxication (voluntary and involuntary), involuntary act defenses, judicial

authority, judicial immunity, justification, law enforcement authority, legislative immunity, lesser evils, medical authority, mental illness (apart from insanity), military orders (lawful and unlawful), mistake (of law and fact), necessity, official misstatement of law, parental authority, plea bargained immunity, provocation, public duty or authority, reflex action, renunciation, self-defense, somnambulism, the spousal defense to sexual assaults and theft, statute of limitations, subnormality, testimonial immunity, the unavailable law defense, unconsciousness, and withdrawal.' 1 Robinson, Criminal Law Defenses, p. 70, fn. 1 (1984)." *Keser,* 706 P.2d at 269.

(Wyo.1977), and *Mewes v. State*, 517 P.2d 487 (Wyo.1973), for support.

[¶ 19] *Mewes* concerned an appeal from a conviction for aggravated assault and battery with a deadly weapon. There, the victim Cooper began a bar fight and attacked Mewes. Cooper was stabbed, and Mewes ran from the bar. One witness saw Mewes stab Cooper in the back. Mewes contended that he had not stabbed Cooper or in any manner participated in the stabbing or even had a knife or instrument that could have inflicted Cooper's injuries. *Mewes*, 517 P.2d at 488. On appeal, Mewes claimed it was error for the trial court to fail to give a self-defense instruction. We decided that the obvious nature or quality of the plea of self-defense is that of justification or excuse for an otherwise unlawful homicide or assault and battery. *Id.* at 488–89. Because the defendant denied that he stabbed the victim at all, a jury would not have been able to somehow infer that he had stabbed the victim in self-defense. *Id.* at 489. "When a charge of this character is made and there is a denial of the stabbing, the only issue presented to the fact finder is whether defendant did in fact stab complainant." *Id.* at 490. We concluded that the trial court did not err in failing to give a self-defense instruction because it would have prejudiced Mewes and deprived him of his defense. *Id.*

[¶ 20] Plainly, Holloman did not deny that any of his actions caused Johnson's death. Instead, his testimony established that he caused Johnson's death when he defended himself from attack, hit Thunder Hawk, and this blow caused Thunder Hawk to lose his grip on Johnson, and it was then that Johnson fell to his death. We do not find that *Mewes* is helpful to the State's position.[6]

[¶ 21] In *Goodman*, the defendant was convicted of first degree murder for the premeditated shooting of his pregnant girlfriend and of killing an unborn child.[7] We reversed the murder conviction because the trial court failed to give a voluntary intoxication instruction although both the State and the defense had offered their versions of one. 573 P.2d at 412.

[¶ 22] We then considered Goodman's contention that the trial court had erred when it denied the defendant his requested jury instructions on self-defense. Goodman claimed that the victim had threatened to shoot him and then grabbed for the gun. We determined that there was evidence that would support finding that there had been a struggle, but the primary issue was whether it fairly raised the issue of self-defense and whether that defense and the defense of accidental killing are legally inconsistent and incompatible defenses in these circumstances. *Id.* at 413. We decided that the record revealed no defense contention that the defendant intended to kill or even purposely shoot the deceased. The defendant had claimed that it was an accident or he could not remember what had happened. *Id.*

> This means he did *not* intend to shoot her or—at least—he had no recollection of an intention to protect himself by shooting Donna Poole. Therefore, he is not contending for an "unlawful homicide" (*Mewes, supra*) which, because he sought to defend himself, was justified. Just the opposite appears in the record. He said he did not need a gun to defend himself

---

6. *Duran v. State*, 990 P.2d 1005 (Wyo.1999), is also inapplicable. *Duran* held that self-defense is not available as a defense against a charge of reckless conduct. *Id.* at 1009. Duran was charged with reckless aggravated vehicular homicide. She argued on appeal that the trial court erred in refusing to give a self-defense instruction. This Court said:

> "While Duran claims that the more persuasive approach finds self-defense is relevant to the "reckless" element of the offense, this Court is inclined to follow "[t]he majority of jurisdictions hold[ing] that self-defense requires intentional conduct." A charge of recklessness involves an unintentional act. The trial court

gave proper instructions to the jury on the elements of the offense and the definitions of "recklessness" and "proximate cause." The jury had the applicable law before it. The trial court did not err in refusing to submit an instruction on self-defense to the jury."
> *Id.* (citations omitted).

7. Wyo. Stat. Ann. § 6–71 (1975) stated in pertinent part:

> "Whoever unlawfully kills an unborn child, ... by any assault or assault and battery willfully committed upon a pregnant woman, knowing her condition, is guilty of a felony...."

against Donna Poole. He testified through his statement that

> "she grabbed ahold of the gun and I grabbed ahold of it too, and we started scuffling over it and that's when it went off. That I know for sure. *But I don't need a gun. Not for a woman."* ...

On the question of self-defense and accident being inconsistent defenses, we said in *Mewes, supra,* at 517 P.2d [at] 489:

> "... Additionally we find persuasive the case of *State v. Peal,* Mo., 463 S.W.2d 840, 841, which holds that when the defendant claims the shooting was accidental he is not entitled to an instruction on self-defense as that would be inconsistent, *Cleghorn v. State,* 55 Wis.2d 466, 198 N.W.2d 577, 579...."

Since there was no evidence of self-defense at the time of the shooting [fn 3], we hold the instruction upon that theory to have been properly refused.

*Id.* For our purposes, footnote three is important to consider. It says:

> We are not overlooking the evidence to the effect that Donna made a threatening remark and they both reached for the gun. Up to this point, a self-defense argument is tenable—but there is *no* evidence that the defendant then intended to discharge the gun against Donna Poole in order to protect himself.

*Id.*

[¶ 23]  *Goodman* is distinguishable on two bases. First, the defendant was claiming self-defense against the homicide victim whereas Holloman is claiming that his action of self-defense against one person caused the death of a third person. Second, *Goodman* found theories of self-defense and accident incompatible when the defendant denies any intent to shoot the victim. Holloman, however, testified that without realizing that Thunder Hawk was holding onto Johnson, he intentionally struck Thunder Hawk. This action caused Thunder Hawk to lose hold of Johnson who then fell to his death. It is Holloman's contention that his intentional act against Thunder Hawk was in self-defense, but caused the accidental death of a third person. Although *Goodman* prohibits an accused from claiming that the act of shooting

a victim is both intentional and accidental, it does not address a claim that an intentional blow in self-defense against one victim caused the accidental death of a third person. In essence, Holloman claims two different defense theories for two successive acts. Wyoming law, however, has not addressed the precise situation presented by Holloman's testimony, and whether we should recognize this legal defense presents an issue of first impression.

[¶ 24]  The general rule is that if a person acting in necessary self-defense unintentionally injures or kills a third person, he is not guilty of homicide or assault and battery. *People v. Morris,* 109 A.D.2d 413, 491 N.Y.S.2d 860, 862–63 (4 Dept.1985); *People v. Mathews,* 91 Cal.App.3d 1018, 154 Cal. Rptr. 628, 631–32 (1979); *State v. Castillo,* 23 Utah 2d 70, 457 P.2d 618, 620 (1969); *Pittman v. State,* 272 P.2d 458, 460 (Okla.1954); *see also,* Ferdinand S. Tino, Annotation, *Unintentional Killing Of Or Injury To Third Person During Attempted Self–Defense,* 55 A.L.R3d 620 (1974); *McCraney v. State,* 110 Nev. 250, 871 P.2d 922, 925 (1994). The rule is not absolute and may not apply if the defendant acted recklessly or negligently. *Morris,* 491 N.Y.S.2d at 862–63. *People v. Jackson,* 390 Mich. 621, 212 N.W.2d 918, 919 (1973). If evidence supports giving a self-defense instruction, "and if on any reasonable view of the evidence the jury might have decided that defendant's actions were justified, the failure to charge justification constitutes reversible error." *Morris,* 491 N.Y.S.2d at 863.

[¶ 25]  In these cases and those cited by authorities collecting cases, the courts refer to a "transferred intent" self-defense theory to justify the accidental killing of a bystander. Under this theory, the courts reason that if transferred intent "in its principal application, establishes that one's criminal intent follows the corresponding criminal act to its unintended consequences, ... [then] the reasoning applies equally to carry *the lack of criminal intent* to the unintended consequences and thus preclude criminal responsibility." *Mathews,* 154 Cal.Rptr. at 631. Accordingly, if self-defense is justified against the intended victim and would excuse

the assault or homicide of that victim, then the assault or homicide of the unintended victim is excused or justified, and no criminal conviction can be obtained.

[¶ 26]  Those courts then look at the specific facts to determine the jury instruction content, but generally, it is a self-defense instruction of the general sort offered in Holloman's case.  However, when a bystander is injured, an accidental homicide instruction may also be given if the law of the particular jurisdiction permits it.  The Nevada case of *McCraney v. State,* 110 Nev. 250, 871 P.2d 922 (1994), offers an example.  In this case the defendant was tried for shooting to death two victims.  He contended that he had shot and killed one in self-defense while that person was seated in a car.  He contended that the second victim was accidentally shot and killed while sitting next to the victim from whom he was defending himself.  *Id.* at 924–25.  The jury received a self-defense instruction and acquitted the defendant of the first degree murder of the one victim.  *Id.* at 924.  The defendant was convicted of the first degree murder of a second victim.  *Id.* On appeal, defendant contended that the trial court improperly refused the following accidental homicide instruction:

> All persons are liable to punishment except those persons who committed the act through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence.

Finding that medical evidence indicated that the second person may have been shot while in the car during defendant's act of self-defense, the Nevada Supreme Court ruled that sufficient evidence supported giving the instruction, the failure to do so was reversible error, and remanded for new trial.  *Id.* at 925.

[¶ 27]  Holloman's version of events does not fit well with this type of stray bullet case or others that apply the transferred intent self-defense theory discussed earlier.  In Holloman's case, a fistfight he claims to have engaged in with one person for self-defense reasons resulted in the falling death of another.  Under these alleged facts, we nevertheless believe that his testimony required that the jury be instructed on the law

of self-defense.  The jury's role is to determine whether Holloman's intentional acts were self-defense resulting in a third party's accidental death for which he may be acquitted, or were premeditated first-degree murder.  Here, the failure to provide a self-defense instruction precluded jury review.

[¶ 28]  We have carefully considered both the State's position that this failure was not reversible error and the trial court's rationale for refusing the instruction.  That consideration notwithstanding, under our well-established law regarding defense theory instructions, several factors support giving the instruction.  First, Holloman testified as to a version of events that could be believed by the jury and, therefore, is sufficient to justify an instruction;  second, although slight, corroborating physical evidence of an attack upon him existed;  third, the fact that his claimed self-defense actions caused the death of a third party, a proper common law defense, precludes application of our rule that self-defense and accident are mutually exclusive, and finally, the State does not claim that Holloman's version of events does not satisfy the elements of self-defense from assault, and our review finds that the proposed instructions were supported by the evidence.  All factors support giving the instruction, and we hold that the failure to give the instruction was reversible error.

[¶ 29]  The defense did not request an accident instruction;  however, if, on remand, the defense prefers that the jury be instructed in addition to arguing that theory to the jury, then the trial court should determine whether the evidence requires an accident instruction.  *Coburn v. State,* 2001 WY 30, ¶¶ 11, 13, 20 P.3d 518, ¶¶ 11, 13 (Wyo.2001).

[¶ 30]  In Wyoming, our rule on accident was settled many years ago, and provides the basis for fashioning an appropriate instruction.

> "The taking of human life by accident, misadventure, or misfortune, while in the performance of a lawful act, exercising due care, and without harmful intent, is excusable;  but all such facts must concur, and the absence of any one of them will involve guilt.  The homicide must have been com-

mitted while the accused was engaged in doing a lawful act, and by lawful means, with ordinary and reasonable care, and without any unlawful or harmful intent. Gross negligence, even in the performance of a lawful act, may render the defendant liable." Warren on Homicide, Permanent Edition, Sec. 164; 30 C.J. 87–88. And that corresponds with our statute, which, in Sec. 32–205, Rev.St.1931, defining manslaughter, states that "whoever unlawfully kills any human being without malice expressed or implied, either voluntarily upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter."

.... Warren on Homicide, *supra*, section 342, states the rule as follows: "Where the theory of the defendant is that the killing or assault was the result of accident or misfortune, and was unintentional, and such theory finds support in the evidence, it is the duty of the court to instruct fully and clearly as to the law relating to accident or misfortune. Such an instruction is, however, unnecessary and properly refused in the absence of evidence tending to show accident or misfortune."

*Eagan v. State*, 58 Wyo. 167, 128 P.2d 215, 222–23 (1942).

[¶ 31] The conviction is reversed and remanded for trial with instructions that the trial court provide the jury with appropriate instructions on self-defense and, if applicable, accident.