2003 WY 166

**In the Matter of the TERMINATION OF PARENTAL RIGHTS TO CG, SG, JG and SG, minors.**

**AMG, Appellant (Respondent),**

v.

**State of Wyoming, Department of Family Services, Appellee (Petitioner).**

No. C–03–1.

Supreme Court of Wyoming.

Dec. 23, 2003.

Representing Appellant: Ronald G. Pretty, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Michael L. Hubbard, Deputy Attorney General; Dan S. Wilde, Senior Assistant Attorney General. Argument by Mr. Wilde.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, JJ., and KALOKATHIS, DJ.

GOLDEN, Justice.

[¶ 1] The district court terminated the parental rights of AMG, the natural mother, to four of her children: CG, SG, JG, and SG. AMG (Mother) appeals only certain specific decisions made by the district court. We affirm.

### ISSUES

[¶ 2] Mother raises the following issues:

1. Did the court err by allowing the introduction of testimony in violation of Rule 702, W.R.E. and *Daubert v. Merrell Dow Pharmacy?* [1]

2. Did the court err in its instructions given to the jury?

3. Did the trial court err when it failed to give the respondent's theory of the case?

### FACTS

[¶ 3] Because of the limited nature of the issues, only a brief outline of the facts is necessary. The Wyoming Department of Family Services (DFS) filed a petition to terminate the parental rights of Mother.[2] At trial, DFS presented testimony from several mental health professionals who have been counseling the children. The mental health professionals testified about the mental health of the children and special needs of the children, and gave their professional opinion as to whether it would serve the best interests of the children to have Mother's parental rights terminated. The testimony from these experts and from others indicated that Mother was not capable of properly caring for the children. A jury returned a verdict terminating Mother's parental rights to each child.

### DISCUSSION

[¶ 4] We summarily affirm the actions of the district court with regard to Mother's issues number two and three. Both of these issues question the propriety of the jury instructions. Mother, however, failed to designate for the record on appeal the jury instructions actually given. Our standard of review for jury instructions requires us to review the instructions as a whole. This Court recently provided, albeit in a criminal jury trial context, guidance with regard to our standard of review for jury instruction issues:

The applicable standard of review is well-established: Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts,

---

1. All references to *"Daubert"* are references to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

2. The parental rights of the natural father were also terminated in the same action. He has not appealed.

instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed. *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, ¶ 9 (Wyo.2001). With specific regard to a defendant's "theory of the case" instruction we have held that:

> Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State,* 474 P.2d 127, 129 (Wyo.1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State,* 833 P.2d 486, 490 (Wyo.1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State,* 704 P.2d 1300 (Wyo.1985). Fundamentally, the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp,* 833 P.2d at 490.

As *Bouwkamp* explained, "[t]heory of defense instructions are to be derived from and address criminal defenses provided for by statute or acknowledged by this court." *Id.* It further noted "common-law defenses are retained unless otherwise provided by this act." *Id.* (quoting Wyo. Stat. Ann. § 6–1–102(b)). Additionally, this Court has discussed acceptable defenses, notably in *Keser v. State,* 706 P.2d 263, 269 (Wyo.1985). *See also,* 1 Paul H. Robinson, *Criminal Law Defenses* § 21, at 70 n. 1 (1984); 1 Charles E. Torcia, *Wharton's Criminal Law* § 39 (15th ed.1993).

> Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State,* 736 P.2d 739, 745 (Wyo.1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State,* 966 P.2d 941, 944 (Wyo.1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.* The refusal to allow an instruction requested by the defendant when due process requires the defendant's instruction be given is reversible error per se. *Id.*

*Holloman v. State,* 2002 WY 117, ¶¶ 15–17, 51 P.3d 214, ¶¶ 15–17 (Wyo.2002).

*Wheaton v. State,* 2003 WY 56, ¶ 20, 68 P.3d 1167, ¶ 20 (Wyo.2003).

■ [¶ 5] The issue is not as simple as whether the jury instructions offered by Mother were correct. According to our standard of review, we must analyze the instructions actually given to the jury to see if, as a whole, they adequately informed the jury concerning the applicable law, allowing the jury to apply that law to their findings with respect to the material facts. Mother had the burden of providing this Court with a complete record on which to base a decision. *Orcutt v. Shober Inv., Inc.,* 2003 WY 60, ¶ 9, 69 P.3d 386, ¶ 9 (Wyo.2003). Because she has not done so, this Court has no other means to review the district court's decision. We must assume the decision was in accord with the law. *Id.* at ¶ 10.

[¶ 6] Mother's first issue is also inadequately presented. Her argument essentially is that the fields of child psychology and psychotherapy have no proper scientific basis. Her objection, as stated in her brief, is that the trial judge abused his discretion in allowing the mental health professionals to "testify as experts as to the medical and psychological problems that the children had. In addition, the Court allowed these witnesses—over objections—to tell the Jury

what their verdict should be.... [T]hese witnesses were liberal arts majors who were regurgitating some psycho-babble mindspeak that social 'scientists' pass off to a gullible public as science." Not surprisingly, Mother offers no citation to authority to support the proposition that the general fields of child psychology and psychotherapy do not meet the legal standards for scientific or specialized knowledge.

■ [¶ 7] Despite the inadequacy of Mother's brief, because of the fundamental nature of parental rights, we will briefly comment upon Mother's concerns. Before trial, Mother filed a motion to either exclude any testimony from mental health providers or to hold a hearing pursuant to W.R.E. 104[3] to determine the admissibility of the testimony of the mental health providers. The trial court denied the motion and did not hold a W.R.E. 104 hearing, but said it would consider specific issues as they arose at trial. Mother argues that, had the trial court held a Rule 104 hearing, it would have found the proposed testimony from the mental health professionals "was not hard science like $2+2$ equals 4 but instead was only the meaningless meanders of people that couldn't be real scientists but could only be pseudo scientists which were specifically barred by *Daubert.*"

[¶ 8] The admissibility of expert testimony is derived directly from W.R.E. 702, which states: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This Court, in previous opinions, has discussed at length the procedure that should guide the district court in reaching its decision regarding the admission of expert testimony. *See generally Seivewright v. State,* 7 P.3d 24 (Wyo.2000); *Bunting v. Jamieson,* 984 P.2d 467 (Wyo.1999). The analysis contained in *Seivewright* is directly on point to the arguments Mother makes in this appeal, and we quote from *Seivewright* at length:

> In performing our review, it is well established that the decision of the district court to admit or reject expert testimony is a decision solely within that court's discretion. *Springfield v. State,* 860 P.2d 435, 438 (Wyo.1993); *Betzle v. State,* 847 P.2d 1010, 1022 (Wyo.1993); *Braley v. State,* 741 P.2d 1061, 1064 (Wyo.1987). Recently, we expanded on that standard of review.
>
> The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable. Our opinion in *Joiner* [*General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)] makes clear that a court of appeals is to apply an abuse-of-discretion standard when it "review[s]" a trial court's decision to admit or exclude expert testimony." 522 U.S. at 138–39, 118 S.Ct. 512, [139 L.Ed.2d 508]. That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion.... Thus, whether *Daubert's* specific factors are, or are not, reasonable

3. Rule 104. Preliminary Questions.

   (a) *Questions of admissibility generally.*—Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

   (b) *Relevancy conditioned on fact.*—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

   (c) *Hearing of jury.*—Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require or, when an accused is a witness, if he so requests.

   (d) *Testimony by accused.*—The accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.

   (e) *Weight and credibility.* This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine. *Bunting v. Jamieson*, 984 P.2d at 470 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999)). "Otherwise, the trial judge would lack the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. at 1176, [143 L.Ed.2d 238]. The district court's decision to decline to hold a reliability hearing is therefore reviewed for an abuse of discretion. *Id.; U.S. v. Charley*, 189 F.3d 1251, 1266 (10th Cir.1999); *U.S. v. Nichols*, 169 F.3d 1255, 1262–63 (10th Cir. 1999).

Because Seivewright's motion for a *Daubert* hearing provided the district court with little reason to hold an evidentiary hearing to analyze Dr. Huber's testimony, we find no abuse of discretion in the district court's refusal to hold such a hearing. Seivewright's motion provided the district court neither with authority to establish the methodology or technique being applied was unreliable nor did it assert that another expert would refute reliability. In short, Seivewright did nothing more than boldly assert that Dr. Huber's testimony was unreliable. Under these circumstances, we conclude there was no abuse of discretion in the district court's refusal to hold a *Daubert* hearing.

Our conclusion on this issue requires examination of the scientific principle being applied. Bite mark identification is based on the theory of uniqueness. "Identification of a suspect by matching his dentition with a bite mark found on the victim of a crime [or a substance] rests on the theory that each person's dentition is unique." 1 Paul C. Giannelli and Edward J. Imwinkelried, *Scientific Evidence*, p. 583 (3rd ed.1999); *State v. Jones*, 273 S.C. 723, 259 S.E.2d 120, 124 (1979). Although several methods of bite mark analysis have been reported, "[a]ll methods involve three steps: (1) registration of the bite mark and the suspect's dentition, (2) comparison of the dentition and bite mark, and (3) evaluation of the points of similarity or dissimilarity." Imwinkelried at 585.

Seivewright does not seriously contend that bite mark identification is not a proper subject for expert testimony. Indeed, the courts faced with this question have unanimously concluded that bite mark comparison is a proper subject for expert testimony. *See* Annotation, *Admissibility of Evidence Tending to Identify Accused by His Own Bite Marks*, 77 A.L.R.3d 1122, 1977 WL 45723 (1977 & 1999 Supp.). While the majority of cases involve flesh bites, courts have also approved bite mark identification in cases involving various foods. *See State v. Ortiz*, 198 Conn. 220, 502 A.2d 400, 401 (1985) (partially eaten apple); *Banks v. State*, 725 So.2d 711, 714–16 (Miss.1997) (bologna sandwich; conviction reversed because state destroyed sandwich before defense could examine); *Doyle v. State*, 159 Tex.Crim. 310, 263 S.W.2d 779 (1954) (cheese, but not raised as issue on appeal). Given the wide acceptance of bite mark identification testimony and Seivewright's failure to present evidence challenging the methodology, we find no abuse of discretion in the district court's refusal to hold an evidentiary hearing to analyze Dr. Huber's testimony. The district court was simply exercising its "discretionary authority . . . to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. at 1176, 143 L.Ed.2d 238. While this is not true for all subjects of expert testimony, we are comfortable that it is true under the circumstances of the case at bar.

Based on the foregoing, we also conclude that *Bunting v. Jamieson*, 984 P.2d 467, is distinguishable. There we wrote:

> [W]e believe that the trial court's decision to dispose of a case by precluding expert testimony requires the same level

of judicial explanation supporting its discretionary decision as the admission of testimony under the catch-all exception. A single conclusory statement applying one nondispositive *Daubert* factor is insufficient.

*Id.* at 475. Read too broadly, this statement could be interpreted to require findings in every case of expert testimony. However, not every subject of expert testimony is appropriate for application of the *Daubert* factors. *Bunting v. Jamieson*, 984 P.2d at 475. Moreover, unlike the expert testimony in *Bunting v. Jamieson*, the reliability of the expert's methods (bite mark identification) can be taken for granted in this case, and findings were unnecessary. On a related note, to the extent Seivewright challenges Dr. Huber's conclusion that Seivewright bit the cheese, these challenges go to the weight of the testimony, not to reliability of the methodology (bite mark identification), and are matters best left to a jury. *Id.* at 472–73. We find no abuse of discretion in the district court's refusal to hold a *Daubert* hearing.

*Seivewright,* 7 P.3d at 29–31.

[■■■] The exact same analysis applied here. It was within the district court's discretion to determine if a W.R.E. 104 hearing was necessary. Mother's motion for the hearing "provided the district court neither with authority to establish the methodology or technique being applied was unreliable nor did it assert that another expert would refute reliability." *Id.* at 30. Mother did not give any explicit reason why the proposed testimony would not be admissible except for stating that the testimony was based upon "junk" science. Under these circumstances, the district court did not abuse its discretion in failing to hold a W.R.E. 104 hearing.

[¶ 10] As to the methodology, the principles of psychotherapy and the principles of child psychology are firmly established. Certainly there may be specific theories that are controversial. Mother, in her brief, does specify a few issues with particularity, such as a diagnosis of post-traumatic stress disorder. However, Mother offers no pertinent authority or cogent argument that even these

specific issues are generally regarded as controversial within the scientific community. Instead, Mother simply objects to the field of child psychology as a whole as being "junk" science. Given this broad objection, and the wide acceptance of the field of child psychology, again, we perceive no abuse of discretion by the district court in failing to hold a W.R.E. 104 hearing.

[■■■] [¶ 11] At trial, Mother's attorney repeatedly renewed his objections to the testimony of the mental health professionals on the grounds that such testimony violated W.R.E. 702. The trial transcript, however, reveals that proper foundations were laid for each of the mental health professionals who testified. Testifying on behalf of the State were a licensed professional counselor, having received his Master's Degree in Counseling Psychology from the University of Northern Colorado in 1973; a licensed clinical social worker, having received her Master's Degree in Social Work in 1989; and a licensed professional counselor, having received her Master's Degree in Counseling and Guidance from the University of Northern Colorado, who has been a practicing therapist for 26 years. Each testified to his or her many years of experience in the mental health field. Each mental health professional also testified regarding his or her interaction with each individual child. Mother offered no specific objections to the qualifications of the mental health professionals, but rather only to the field of mental health generally. Mother did not, however, present any evidence, or even cogent argument, to support her objections. Under these circumstances, again, we find no abuse of discretion by the trial court in overruling Mother's objections and allowing the expert testimony.

[■■■] [¶ 12] Mother also objected to the testimony from the mental health experts on the grounds that, to the extent the testimony related to or relied upon statements made by the children, such statements were hearsay. Further, Mother objected to the mental health experts testifying to what she considers to be an ultimate fact—whether or not it would be in the best interests of the children to be returned to Mother. This Court dealt at length with both these issues in *Griswold*

*v. State,* 994 P.2d 920 (Wyo.1999). Again, because of its pertinence, we quote at length from that decision:

*Argument Three: Hearsay Testimony of Dr. Sirotnak*

Griswold challenges portions of the testimony of the State's expert witness, Dr. Sirotnak, the director of the Kempe Child Protection Team at Denver Children's Hospital. As noted above, questions related to the admissibility of evidence are within the sound discretion of the trial court. *Punches v. State,* 944 P.2d 1131, 1136–37 (Wyo.1997) (citing *James v. State,* 888 P.2d 200, 204 (Wyo.1994)). We give considerable deference to the trial court's rulings and will not disturb them absent a clear abuse of discretion. *Vit v. State,* 909 P.2d 953, 957 (Wyo.1996); *Herdt v. State,* 891 P.2d 793, 801 (Wyo.1995).

As part of diagnosing and developing a treatment plan for AO and TM, the Kempe Child Protection Team performed both physical and psychological examinations. The team psychologist, Dr. Michelle Kelly, interviewed and evaluated the children and prepared a written report of her findings. However, before the written report was complete, Dr. Kelly discussed its contents with Dr. Sirotnak and told him that AO and TM were victims of sexual assault.

Griswold objects to Dr. Sirotnak's testimony based on Dr. Kelly's verbal conclusion that AO and TM were victims of sexual abuse. Because Dr. Sirotnak did not participate in the interview process of either victim and was never in a position to observe their demeanor, Griswold argues his testimony should have been excluded as hearsay. Griswold further claims that Dr. Sirotnak's statements regarding TM were not based or dependent in any way upon physical evidence or physical observations, and therefore were inadmissible for purposes of medical diagnosis or treatment. W.R.E. 803(4). Finally, Griswold contends that Dr. Sirotnak's testimony improperly attributed fault, causation or guilt to him. We disagree.

Dr. Sirotnak's testimony is admissible under W.R.E. 703, which states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

We recognized in *Hayes v. State,* 935 P.2d 700 (Wyo.1997), that out-of-court statements by a third party ordinarily are inadmissible to prove the truth of the matter asserted, but may be admissible to show the basis of an expert's opinion. *Id.* at 703 (citing *McGinn v. State,* 928 P.2d 1157, 1162–63 (Wyo.1996)). In *Hayes* the evidence the treating physician learned from the victim's mother was not offered for the truth of the matter asserted, but was relevant because it established a basis for the doctor's expert opinion, and the doctor's testimony was her own opinion, not that of others. *Hayes,* 935 P.2d at 704; *McGinn,* 928 P.2d at 1163. *See also Stephens v. State,* 774 P.2d 60, 67 (Wyo.1989) (error to allow expert to opine as to who the perpetrator was or his guilt.) Out-of-court statements may be allowed for the limited purpose of showing the basis of an expert's opinion, so long as other experts in the field would rely on similar evidence. *Hayes,* 935 P.2d at 703. Dr. Sirotnak's testimony concerning Dr. Kelly's statements about TM and AO was not offered for the truth of the matter asserted, but was relevant because it established a basis for his expert opinion that AO and TM were victims of sexual abuse. Dr. Sirotnak testified that it was routine practice for members of the multi-disciplinary team to rely on each other's information. Based on the purpose and use of the testimony, the district court did not abuse its discretion when it admitted Dr. Sirotnak's testimony into evidence.

*Argument Four: Expert Testimony*

The fourth issue Griswold raises is that the district court erred in permitting Dr. Sirotnak to render an opinion that AO was a victim of sexual abuse. The basis for his argument is that Dr. Sirotnak's opinion testimony was tantamount to vouching for

the child's credibility and therefore inadmissible. Griswold contends Dr. Sirotnak's opinion rested solely upon the substance of AO's statements and was no more than an unfounded belief in the child's veracity. While Griswold is correct that it is error to permit a psychotherapist to vouch for the credibility of a victim, "we have permitted an expert witness to testify that the behavior of a victim was consistent with that generally displayed by victims of sexual assaults, even though such testimony does, in some way, validate the credibility of the victim." *Stephens,* 774 P.2d at 68.

Griswold's argument that Dr. Sirotnak's opinion was based on the children's statements and little else is not supported by the record. In addition to psychological observations and questions Dr. Kelly asked while interviewing the girls, Dr. Sirotnak did, in fact, have some physical basis, the abnormality in AO's anal exam, upon which he based his opinion. Dr. Sirotnak also testified that his opinion did not rest solely on the substance of AO's statements, but a number of other factors. He reflected on the language used to describe the reported events, the relative sophistication of AO's expressed knowledge of sexual matters, the extent to which her descriptions of sexual acts were graphically detailed, the consistency of her statements in those respects, and behavior indicating effects of abuse Dr. Kelly noted. *See also Rigler,* 941 P.2d at 740; *Punches,* 944 P.2d at 1136; *Hayes,* 935 P.2d at 703 (no error to introduce opinion testimony that individual was victim of sexual abuse.)

*Griswold,* 994 P.2d at 926–29 (footnote omitted). *Griswold* holds that the out-of-court statements of the children are not hearsay because they are offered not for the truth of the matter asserted. Further, an expert can testify as to ultimate facts. Mother offers no cogent argument or pertinent authority why our holding should be different in this case.

## CONCLUSION

[¶ 13] Mother has offered no cogent argument or pertinent authority to support her issues on appeal. The ruling of the district court is affirmed.