**Israel SANCHEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 84–69.**

Supreme Court of Wyoming.

Jan. 31, 1985.

Leonard D. Munker, Public Defender, Sylvia Lee Hackl and Martin J. McClain, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Patrick J. Crank, Legal Intern, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant was convicted by a jury of second-degree murder in violation of § 6-2-104, W.S.1977 (June 1983 Replacement).[1] He appeals from that conviction, stating the issues on appeal as follows:

"1.   Whether the trial court erred in failing to give Appellant's proposed Instruction No. D.

"2.   Whether the prosecutor's comments in closing argument regarding flight as evidence of guilt were improper."

We affirm.

The circumstances of this case are briefly as follows. The victim, Rudy Espinoza, married one of appellant's daughters, and they had a brief and stormy marriage; the daughter eventually moved back to her parent's home. Rudy made numerous threats against appellant's family, and a few days before his death he broke a car window at appellant's residence. On the day of the shooting, appellant was riding in Casper with another son-in-law, Perry, on business. They saw Rudy, who was also driving

---

**1.**   Section 6–2–104 provides:

"Whoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."

through town. At approximately 12:00 noon, they encountered each other again, near the Rialto Barbershop on Center Street. Rudy's Camaro was traveling the wrong way in a one-way alley; appellant's car came to a stop several feet away from the Camaro, with the two cars facing each other. There were numerous witnesses.

The testimony at trial was that appellant jumped out of his car with a .22 caliber pistol, fired one shot through the front window of Rudy's car, and then ran to the driver's side of the Camaro and fired five more shots through that window. At the same time, Rudy was rolling up his window and holding his arm in front of his face to protect himself.

After the shooting, appellant ran back to his car, and Perry drove off. Appellant testified that he dropped Perry off and went to his home to get an interpreter to contact the police. The police, having been contacted by observers, arrived at the Sanchez home before appellant could have someone call them. Appellant was arrested and charged with first-degree murder. Rudy Espinoza, after being transported to the hospital, died as a result of the gunshot wounds.

## I

Appellant raised the issue of self-defense at trial. He testified that he knew Rudy kept a loaded gun between the front seats of his car, and that when he saw Rudy's car he saw Rudy reach between the seats and, consequently, he thought that Rudy was reaching for his gun. Appellant testified further that he had acquired a gun to protect his family from Rudy and that, fearing for his life, he took that gun from under the car mat and shot Rudy before Rudy could shoot him.[2]

At the instructions conference during trial, counsel for appellant objected to the refusal to give Instruction No. D, saying:

"In regard to Refused Instruction Number D, the Defendant submits that again the Court should have instructed the Jury in a separate instruction that under the circimstances [sic] of this case the time element involved was such that the Defendant could not have had an ample amount of time to judge precisely how much force was necessary, and that the Jury should have been so instructed."

Refused Instruction No. D reads as follows:

"If you find that the initial use of deadly force was justified you must not then find that the defendant's claim of self-defense is negated because a shot was fired after the apprehended danger was over. A person in imminent peril of death or serious bodily injury, or one who has reasonable grounds to believe he is in such peril, is not expected to have perfect judgment. A person who has reasonable grounds to believe himself to be threatened by another person may not have time to reason out every response he should make or to judge precisely how much force he has to use to ensure his safety."

Appellant claims that it was error to refuse this instruction because it was a concept pertinent to appellant's asserted theory of the case, that being self-defense. We have said before that the defendant in a criminal case has the right to have his defense affirmatively presented to the jury. *Goodman v. State*, Wyo., 573 P.2d 400, 408 (1977). The right to an instruction on the defendant's theory of the case rests on two conditions precedent, namely, the offered instruction must be sufficient to inform the court of the defendant's theory and there must be competent evidence in the record to support the theory. *Goodman v. State*, supra, 573 P.2d at 408; *Thomas v. State*, Wyo., 562 P.2d 1287, 1292–1293 (1977); *Blakely v. State*, Wyo., 474 P.2d 127, 129 (1970); *State v. Hickenbottom*, 63 Wyo. 41, 178 P.2d 119, 131 (1947). However, it is equally true that when the principles of a requested instruction, even if correct, have been properly and sufficiently covered by

---

2. A gun was found in Rudy's Camaro, in a locked compartment of the car. The gun was not within Rudy's reach as he sat in the driver's seat.

other instructions, its refusal is not error. *Cullin v. State,* Wyo., 565 P.2d 445, 453 (1977); *Goodman v. State,* Wyo., 601 P.2d 178, 183 (1979). When, as here, an instruction or instructions on the defendant's theory are given, even though not the one or ones requested by defendant, the question is the sufficiency and correctness of such instruction or instructions. The trial court did give five instructions on defendant's theory of self-defense.

## "INSTRUCTION NO. 18

"If the defendant had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to use deadly force in order to defend himself. 'Deadly force' means force which is likely to cause death or serious bodily harm.

"The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the other person was about to kill him or do him serious bodily harm. The danger must have been apparent, present and imminent or must have appeared to be so under the circumstances.

"If the defendant believed that he was in imminent danger of death or serious bodily harm, and that deadly force was necessary to repel such danger, and if a reasonable person in a similar situation seeing and knowing the same facts would be justified in believing himself in similar danger, he would be justified in using deadly force in self-defense. He would be justified even though the appearance of danger later proved to be false and there was actually neither purpose on the part of the other person to kill him or do him serious bodily harm nor imminent danger that it would be done, nor actual necessity that deadly force be used in self-defense. If the person so confronted acts in self-defense upon such appearances of danger from

honest belief, his right of self-defense is the same whether the danger is real or merely apparent."

## "INSTRUCTION NO. 19

"Even if the defendant had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, he was justified in using deadly force to repel the danger only if he retreated as far as he safely could before doing so. The law requires a person to retreat rather than to take the life of his adversary if there was a convenient mode of retreat without increasing his peril or apparent peril. To excuse a failure to retreat, it is necessary that defendant's peril would be increased, or that it reasonably appeared that it would be increased by retreat. If you find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self-defense."

## "INSTRUCTION NO. 20

"Generally, the right to use self-defense is not available to one who is the aggressor or provokes the conflict. However, if one who provokes a conflict thereafter withdraws from it in good faith and informs his adversary by words or actions that he desires to end the conflict, and he is thereafter pursued, he then has the same right of self-defense as any other person."

## "INSTRUCTION NO. 21

"The right of self-defense ceases to exist when there is no longer any apparent danger of further violence on the part of an assailant. Thus where a person is attacked under circumstances which justify his exercise of the right of self-defense, and thereafter he uses such force upon his attacker as to render the attacker incapable of inflicting further injuries, the law of self-defense then ceases to work in favor of the person attacked."

"INSTRUCTION NO. 22

"One who has reasonable grounds to believe that another will attack him, and that the anticipated attack will be of such a character as to endanger his life or limb, or to cause him serious bodily harm, has a right to arm himself for the purpose of resisting such attack.

"If the defendant armed himself in reasonable anticipation of such an attack, that fact alone does not make the defendant the aggressor or deprive the defendant of the right of self-defense."

In *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981), an instruction very similar to Refused Instruction No. D was also requested and refused. Also there the court gave its own instruction on the defendant's theory of self-defense. We held there that the refusal of the instruction was not error since the instruction given need not be "couched in the precise words requested by a party." Id. at 1112. Further, a trial court may refuse requested instructions which are correct, as long as the principles embodied therein are covered by other instructions. *Scheikofsky v. State*, supra; *Campbell v. State*, Wyo., 589 P.2d 358, 369 (1979); *Benson v. State*, Wyo., 571 P.2d 595, 597 (1977); *State v. Hickenbottom*, supra, 178 P.2d at 127. It is within the court's discretion to present its own instruction or instructions covering the defendant's theory of the case. *Scheikofsky v. State*, supra.

■ We hold that the instructions given in this case were a correct statement of the law regarding self-defense, defendant's theory of the case, and, therefore, defendant's Instruction No. D was correctly refused as the matter was covered by the instructions given.

II

During closing arguments, the prosecutor made a statement equating flight with evidence of guilt. Appellant claims this was error. We must look at the arguments of counsel in their entirety so as not to "take sentences and phrases out of the context of the complete picture being presented by the prosecution." *Hopkin-*

son v. State, Wyo., 632 P.2d 79, 166 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *Mayer v. State*, Wyo., 618 P.2d 127, 131 (1980).

■ Of course, the first evidence of flight in this case came from the numerous witnesses who testified at trial. Appellant does not contend that this evidence should not have been admitted. Rather, he contends that error was committed by allowing the prosecution to comment to the jury on how to judge such evidence when the court had not instructed the jury with regard to flight. However, even though appellant's counsel was the first to raise the issue of flight in closing arguments, appellant did not request an instruction on flight. In her closing argument, appellant's counsel said:

"* * * Now, after he did that and got back in the car, he headed home. He didn't stay there because he told you, I was nervous, I was excited, I was scared, and I wasn't thinking, but he headed home, Ladies and Gentlemen, because he wanted to call the police. Israel doesn't speak English, so he needed some assistance to call the police."

Up to that point, the prosecutor had not mentioned appellant's flight. He did, in rebuttal closing, say:

"Counsel said that the Defendant fled the scene because he couldn't speak English. His interpreter from the insurance company was his driver at the scene of the shooting. Israel Sanchez wasn't worried about interpreters and speaking English, Israel Sanchez didn't need to go home to call the police. Ed Heatherington was on the phone with the police already. The Defendant went back to his car, went back and said, vamoose, let's go. He told his daughters when he got home, he was going to jail. Now this flight is evidence of his guilt."

The prosecutor was simply offering another way to view the substantial evidence that the defendant left the scene immediately after firing the shots. That is the purpose of closing arguments. *Wheeler v. State*, Wyo., 691 P.2d 599, 605 (1984); *Browder v. State*, Wyo., 639 P.2d 889, 893

(1982); *Hopkinson v. State*, supra, 632 P.2d at 145; *Ross v. State*, 8 Wyo. 351, 57 P. 924 (1899). Prosecutors are not any more limited in their closing arguments than are defense counsel. They both may review the evidence and suggest inferences thereon to the jury. *Browder v. State*, supra. Defense counsel had offered one way to view the evidence and the prosecutor simply gave an alternative. As we said in *Freeze v. State*, Wyo., 662 P.2d 415, 418 (1983), "[t]he appellant opened the door and the prosecutor merely closed it."

Furthermore, we have held that evidence of flight is admissible as evidence which may be considered along with other circumstances in the case as tending to show a consciousness of guilt. *Jones v. State*, Wyo., 568 P.2d 837 (1977). " ' "[T]he wicked flee, even when no man pursueth; but the righteous are bold as a lion." ' " Id. at 845, n. 10, quoting Professor Wigmore, II Wigmore on Evidence, (3rd ed. 1940), § 276(4), pp. 111–119.

If appellant had wanted an instruction on flight given to the jury, he should have proposed one. However, appellant cannot now be heard to complain that the jury was not instructed on a matter when he was the first to comment on it and the prosecutor merely responded. There was no error in the prosecutor's remarks.

Affirmed.