2001 WY 30

**Jay Rodney COBURN, Appellant, (Defendant),**

v.

**The STATE of Wyoming, Appellee, (Plaintiff).**

No. 00–3.

Supreme Court of Wyoming.

March 26, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Assistant Appellate Counsel.

Representing Appellee: Gay Woodhouse, Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Paul S. Rehurek, Deputy Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

LEHMAN, Chief Justice.

[¶ 1] Appellant Jay Rodney Coburn appeals from his conviction for aggravated assault and battery.

[¶ 2] We affirm.

### ISSUES

[¶ 3] Coburn presents a single issue for review:

Whether the district court erred when it gave a jury instruction to the jury that had been proposed but then withdrawn by the defense, but had not been proposed by the prosecution, and which was not supported by the evidence, over the objection by appellant?

### FACTS

[¶ 4] On the night of November 28, 1998, Coburn was patronizing a bar in Riverton, Wyoming. The victim, Ronald Berg, was also a customer on this night. At approximately midnight, the two men exchanged some pushing and harsh words after bumping into each other. A bartender broke up the altercation. A short time later, while the victim was talking with his friends, he saw Coburn standing at the door, motioning for him to follow him outside. The victim perceived this invitation as one to go outside to

fight, and he proceeded toward the exit. It took the victim approximately one to two minutes to get through the crowded bar. During those few minutes, Coburn positioned himself outside facing the door in a crouched position and had placed a standard-sized hunting knife in the waistband of his pants in the small of his back.

[¶ 5] Accounts as to exactly what happened next vary somewhat, but are fairly consistent that once the victim made his way outside, the two men immediately lunged toward each other. Once they separated, the victim noticed that Coburn had a knife. The victim wrapped a shirt around his hand and "bull-rushed" Coburn, taking him to the ground. The victim was ultimately able to get control of Coburn by lying across him, placing his right arm on Coburn's throat, and subduing the knife-brandishing arm by simply holding it to the ground. Witnesses agreed that at this point the victim did nothing more than restrain Coburn until the police arrived. It was not until the victim got up that he realized that he had been stabbed in the abdomen and again in his shoulder. He was taken to the hospital where doctors determined that his abdominal wound required immediate surgery as the knife nicked the outer lining of the large intestine.

[¶ 6] Coburn was arrested and charged with aggravated assault and battery. Coburn did not testify at his trial, but he asserted that he had acted in self-defense. At the jury instruction conference, Coburn objected to the giving of a self-defense instruction that related to situations where the defendant is the aggressor. Although he had originally proposed the instruction, he had ultimately decided to withdraw it, arguing that the evidence did not support the idea that he was the aggressor. The judge disagreed and gave the instruction along with other instructions on self-defense.

[¶ 7] The jury convicted Coburn of aggravated assault and battery, and the trial court sentenced him so serve a sentence of not less than three nor more than five years in the Wyoming State Penitentiary. The trial court also ordered Coburn to pay restitution to the victim in the amount of $18,152.40. Coburn appeals his conviction.

## DISCUSSION

[¶ 8] Coburn contends that the trial court erred by giving a jury instruction that he had withdrawn and that the evidence did not support. The State replies that Coburn is under the mistaken impression that he has the right to prevent the jury from being instructed in a way that does not support his theory of defense.

[¶ 9] When we review claims of error that pertain to jury instructions, we review the jury instructions as a whole without singling out individual instructions or parts of them. *Ellison v. State*, 3 P.3d 845, 849 (Wyo.2000). We give the trial courts great latitude in instructing the jury. *Merchant v. State*, 4 P.3d 184, 190 (Wyo.2000). We "will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial." *Id.* (quoting *Harris v. State*, 933 P.2d 1114, 1126 (Wyo.1997)).

[¶ 10] The challenged instruction read:

Generally, the right to use self-defense is not available to an aggressor who provokes the conflict. However, if one provokes a conflict but thereafter withdraws in good faith and informs the adversary by words or actions of the desire to end the conflict and is thereafter pursued, that person then has the same right of self-defense as any other person. The person is justified in using force to the same extent that any other person would be who was acting in self-defense.

Coburn asserts that it was his prerogative to decide what jury instructions on his theory of defense were given to the jury. He further argues that the evidence did not support the instruction, maintaining that the victim was actually the aggressor.

[¶ 11] We first dispose of Coburn's contention that it was within his "exclusive province" to decide which instructions relating to his self-defense theory should be given to the jury. He fails to cite any authority to

support this proposition because the law is contrary. "It is within the court's discretion to present its own instruction or instructions covering the defendant's theory of the case." *Baier v. State*, 891 P.2d 754, 757 (Wyo.1995) (quoting *Sanchez v. State*, 694 P.2d 726, 729 (Wyo.1985)). Indeed, the trial court is charged with the duty to present instructions on the law that apply to the issues that were raised by the evidence. *Id.* at 756.

[¶ 12] After reading the transcript of the trial proceedings in this case, we agree with the trial court's opinion that the evidence did support the inference that Coburn was an aggressor in this situation. Witness after witness testified about how Coburn seemed to be the more aggressive and agitated of the two and that it was Coburn that motioned the victim outside to fight. It took approximately one to two minutes for the victim to get outside during which time one witness testified that Coburn situated his knife in a convenient place and took a stance that readied him to fight. The victim did testify that he tried to get in the first blow, but other witnesses indicated that it appeared that both men immediately lunged at one another.

[¶ 13] The law in Wyoming provides that an aggressor loses the right to self defense unless he retreats in good faith and informs his opponent of his desire to end the conflict. *State v. Bristol*, 53 Wyo. 304, 318, 84 P.2d 757, 761 (1938); *Braley v. State*, 741 P.2d 1061, 1067 (Wyo.1987). A trial court must "determine whether there is evidence before the jury from which it could infer that the defendant was at fault and be regarded as an aggressor and deprive himself of the right of self-defense." *Cullin v. State*, 565 P.2d 445, 450–51 (Wyo.1977). Our case law also provides that two individuals who mutually agree to fight are both considered aggressors, making a self-defense theory unavailable to either of them. *Leeper v. State*, 589 P.2d 379, 383 (Wyo.1979). Because Coburn was asserting self-defense, the trial court was required to give the instruction to adequately inform the jury of the applicable law.

[¶ 14] The evidence presented in this case supported the inference that Coburn was an aggressor by either starting the fight or at least by being a willing participant. The trial court, therefore, acted properly by giving the challenged instruction.

[¶ 15] Affirmed.