2005 WY 96

**Brooks A. BURKHARDT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 04–111.

Supreme Court of Wyoming.

Aug. 18, 2005.

Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender, for Appellant.

Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; and

D. Michael Pauling, Senior Assistant Attorney General, for Appellee.

Before HILL, C.J., and GOLDEN, KITE, VOIGT and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Brooks Burkhardt (Burkhardt), disputes his March 4, 2004 conviction for burglary of a vehicle.[1] Burkhardt asserts that there was not sufficient evidence presented at trial to sustain his conviction, that his theory of the case instruction was erroneously refused by the trial court, and that the trial court took into account improper information in imposing sentence. We will affirm.

## ISSUES

[¶ 2] Burkhardt brings forward these issues:

 I. Whether there was sufficient evidence to convict [Burkhardt] of burglary.

 II. Whether the jury was properly instructed.

 III. Whether the trial court abused its discretion when it took into account unproved factors about [Burkhardt's] "attitude" and "lack of self discipline" and imposed a sentence in conflict with *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

The State's brief essentially mirrors the issues posed by Burkhardt.

## FACTS

[¶ 3] The operative facts of the crime at issue in this case take place in a compressed period of time of about 30 minutes, between 1:20 p.m. and 1:50 p.m., give or take a few minutes. Nonetheless, the telling of the story will take up quite a bit of print space. At about 1:20 p.m., on June 6, 2003, Joe Spears (Spears) stopped at the Smoker Friendly Gasamat in Torrington to buy cigars. Spears pulled into the Gasamat and parked his pickup truck near the building. He went into the store, leaving his pickup unlocked. His purchase took longer than expected ("an extra minute or so" because the cigars he wanted to buy were priced incorrectly). He knew the correct price because he often bought them at a Gasamat, where his girlfriend worked, in Scottsbluff, Nebraska. As he was making his purchase, he could see out the window and noticed three boys standing near his truck. He noticed that one of them opened his passenger-side door and that the interior lights were engaged. He observed that a blond-haired boy (Burkhardt), wearing a blue shirt, leaned into the passenger door of the pickup, and appeared to take something from the truck. The other two boys (Nathan Douglass and Matthew Douglass) had dark hair and were not in a position to reach into the pickup. This occurred just about the time Spears was coming out the front door of the Gasamat, and he watches as Burkhardt "spooks and flees." As Burkhardt left, it appeared that he was concealing something in his right hand. Spears positively identified Burkhardt as the individual who had reached into his pickup. Burkhardt and the Douglass brothers were all from Scottsbluff–Gering, Nebraska area and were visiting Torrington for the day.

[¶ 4] At first, Spears worried that Burkhardt might have taken his cell phone because he had left it in a visible spot on the

---

1. **§ 6–3–301. Burglary; aggravated burglary; penalties.**

 (a) A person is guilty of burglary if, without authority, **he enters or remains in a** building, occupied structure or **vehicle,** or separately secured or occupied portion thereof, **with intent to commit larceny** or a felony therein.

 (b) **Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,-000.00), or both.**

 (c) Aggravated burglary is a felony punishable by imprisonment for not less than five (5) years nor more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,-000.00), or both, if, in the course of committing the crime of burglary, the person:

 (i) Is or becomes armed with or uses a deadly weapon or a simulated deadly weapon;

 (ii) Knowingly or recklessly inflicts bodily injury on anyone; or

 (iii) Attempts to inflict bodily injury on anyone.

 (d) As used in this section "in the course of committing the crime" includes the time during which an attempt to commit the crime or in which flight after the attempt or commission occurred. [Emphasis added.]

Wyo. Stat. Ann. § 6–3–301 (LexisNexis 2005).

hump between the two front seats. However, when he got to his pickup the phone was there and he did not notice anything else as missing. However, as he started his pickup, he noticed that the interior lights would not go off, and he had to get out and shut his passenger side door. At that point, he was even more certain that someone had been inside his pickup. He confronted the boys about having been inside his pickup, telling them that, "You better hope there is not anything missing, because, you know, I will have his license number." As he left the Gasamat, Spears decided to call his girlfriend at the Gasamat in Scottsbluff, and have her call the manager of the Gasamat in Torrington and ask her to get the license plate number of the pickup Burkhardt was in, as well as to warn her that the boys were there and might be up to something.

[¶ 5] As the events described above were nearing their conclusion, Adalita Esquibel and her family arrived at the Gasamat. Both Spears and Burkhardt and his companions were still there. She saw and heard Spears having words with the boys, and she watched Spears leave. Immediately after Spears left, she observed Burkhardt pull a checkbook out of a trash can. At trial, Esquibel identified the person who retrieved the checkbook from the trash can as Burkhardt. Esquibel and her fiancé made a decision that the police should be called and such a call was placed to the Torrington police.

[¶ 6] At this point, Burkhardt and his companions were still at the Gasamat, but were unable to get their vehicle started. They then pushed it away from the gas pumps and to a position away from the Gasamat building, but still on the grounds of that business. The location of that vehicle was now near a dumpster that serviced the Gasamat. The investigating police officer was dispatched to the Gasamat at 1:53 p.m. When he arrived there, he talked to the manager of the Gasamat and Esquibel, and then talked to Burkhardt and the Douglass brothers. The police officer also identified Burkhardt as being present at the Gasamat. The police officer asked about the brown checkbook that Esquibel had described, and all three boys denied any knowledge of it. The police officer did not see the checkbook when he

looked through their vehicle after the boys consented to a search of the vehicle. At that point, the police officer allowed the boys to leave.

[¶ 7] After again discussing with Esquibel her observations of Burkhardt and the checkbook, the police officer then asked the manager of the Gasamat to contact Spears and ask if he was missing his wallet or checkbook. She did so. Spears knew that he had his wallet but inspected the cab of his pickup and discovered that his checkbook was missing. The police officer then conducted a further search of the area and found Spears' checkbook in the dumpster near where the boys had parked their disabled vehicle while they got it started. The police found the boys still in Torrington and brought them in for further questioning. Burkhardt denied any involvement in taking Spears' checkbook, as did the Douglass brothers.

[¶ 8] At trial, Nathan Douglass testified that he, his brother, and Burkhardt were at the Gasamat on the date and at the time when the events described above occurred. Nathan denied any involvement in taking Spears' checkbook. After the group had been questioned at the Gasamat, Nathan asked Burkhardt what had happened to the checkbook and Burkhardt responded it "had been thrown in the dumpster." After the second round of questioning at the police station was completed, Burkhardt asked the Douglass brothers to go back to the alley by the Gasamat, "to see if he could find the checkbook." Once there, Burkhardt told Nathan to leave because "he had seen somebody staring down the alley." The group then left Torrington and returned to Scottsbluff. On the way back to Scottsbluff, Burkhardt commented to Nathan that, "There ain't any evidence or proof of anything, of anything being taken." Matthew Douglass also testified and stated that he did not remove a checkbook from a vehicle at the Gasamat on the date and time in question. Burkhardt chose not to testify or present any other evidence.

## DISCUSSION

**Sufficiency of the Evidence**

■ ■ [¶ 9] In addressing a claim of insufficiency of the evidence, we must deter-

mine whether or not any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. When considering a claim of the sufficiency of the evidence, we review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not reweigh the evidence nor will we re-examine the credibility of the witnesses. *Pacheco v. State*, 2004 WY 160, ¶ 6, 102 P.3d 887, ¶ 6 (2004) (citing *Mascarenas v. State*, 2003 WY 124, ¶ 4, 76 P.3d 1258, ¶ 4 (Wyo.2003)); *also see Leyo v. State*, 2005 WY 92, ¶¶ 12–17, 116 P.3d 1113, ¶¶ 12–17 (2005).

[¶ 10] With specific reference to the sufficiency of evidence in a burglary case, we have said:

> When sufficiency of the evidence is challenged in burglary convictions, this Court examines the record, in a light most favorable to the State, to see if there is slight corroborative evidence, other than possession of stolen goods, which connects the appellant with the burglary. *King v. State*, 718 P.2d 452, 453 (Wyo.1986). We have stated that the possession of stolen goods alone is not sufficient evidence to convict for burglary. *Id. (quoting Newell v. State*, 548 P.2d 8, 13 (Wyo.1976)). However, we have also concluded with regard to burglary that, " '[t]he most significant and material evidence of defendant's guilt is his possession of the stolen property. Possession is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required' " to convict. *Sutherland v. State*, 944 P.2d 1157, 1161 (Wyo.1997) (*quoting Newell*, 548 P.2d at 13).

*McGarvey v. State*, 2002 WY 149, ¶ 14, 55 P.3d 703, ¶ 14 (Wyo.2002); *also see Wells v. State*, 613 P.2d 201, 203 (Wyo.1980) ("A defendant need not be found in possession of stolen property as long as he may be found by evidence closely related to its disappearance by some connecting evidence.").

[¶ 11] We have set out the evidence admitted at trial in detail. Our conclusion that this evidence is sufficient to sustain the conviction readily follows from the consideration of that evidence. Each and every element of the crime was proved beyond a reasonable doubt, and Burkhardt's contention that he was merely present, but did not participate in the larceny of Spears' checkbook, finds no support in the evidence admitted at trial. Spears identified Burkhardt as the only person who could have taken the checkbook from his pickup. Esquibel identified Burkhardt as the person who retrieved a checkbook from a trash can. The checkbook was found in a dumpster near where the initial larceny took place. Burkhardt made statements that incriminated him in the larceny of the checkbook. That evidence is sufficient to sustain the jury's verdict and the trial court's judgment of guilt.

**Theory of the Case Instruction**

[¶ 12] The applicable standard of review is well-established: Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts; instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct; a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction; and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed. *Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, ¶ 9 (Wyo.2001). With specific regard to a defendant's "theory of the case" instruction we have held that:

> Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State*, 474 P.2d 127, 129 (Wyo. 1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State*, 833 P.2d 486,

490 (Wyo.1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State*, 704 P.2d 1300 (Wyo. 1985). Fundamentally, the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp*, 833 P.2d at 490.

As *Bouwkamp* explained, "[t]heory of defense instructions are to be derived from and address criminal defenses provided for by statute or acknowledged by this court." *Id.* It further noted "common-law defenses are retained unless otherwise provided by this act." *Id.* (quoting Wyo. Stat. Ann. § 6–1–102(b)). Additionally, this Court has discussed acceptable defenses, notably in *Keser v. State*, 706 P.2d 263, 269 (Wyo. 1985). See also 1 Paul H. Robinson, Criminal Law Defenses § 21, at 70 n. 1 (1984); 1 Charles E. Torcia, Wharton's Criminal Law § 39 (15th ed.1993).

Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State*, 736 P.2d 739, 745 (Wyo.1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State*, 966 P.2d 941, 944 (Wyo.1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.* The refusal to allow an instruction requested by the defendant when due process requires the defendant's instruction be given is reversible error per se. *Id.*

*Wheaton v. State*, 2003 WY 56, ¶ 20, 68 P.3d 1167, ¶ 20 (Wyo.2003) (citing *Holloman v. State*, 2002 WY 117, ¶¶ 15–17, 51 P.3d 214, ¶¶ 15–17 (Wyo.2002)); *also see Chavez–Becerra v. State,* 924 P.2d 63, 67–68 (Wyo.1996) (An obvious concept, such as simply that defendant is not guilty, cannot be elevated to a theory of defense and necessitate a special instruction.).

 [¶ 13] Burkhardt challenges the district court's refusal to give what he identified as a theory of the case instruction. That instruction was a modification of Wyoming Criminal Pattern Jury Instruction 7.01C (2004), which provides:

### 7.01C ACCESSORY BEFORE THE FACT—MERE PRESENCE AT THE SCENE OF THE CRIME INSUFFICIENT TO CONVICT

Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that the defendant was an accessory before the fact to that crime. The State must prove that the defendant knowingly associated himself with the crime in some way as a participant—someone who wanted the crime to be committed—and not as a mere spectator.

[¶ 14] As offered by Burkhardt, the instruction looked like this:

### 7.01C ACCESSORY BEFORE THE FACT—MERE PRESENCE AT THE SCENE OF THE CRIME INSUFFICIENT TO CONVICT

Merely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that the defendant ~~was an accessory before the fact to that crime~~ IS GUILTY OF THE OFFENSE CHARGED. The State must prove that the defendant knowingly associated himself with the crime in some way as a participant—someone who wanted the crime to be committed—and not as a mere spectator.

[¶ 15] At the instructions conference, the district court's reasoning for refusing the instruction was this:

THE COURT: Well, first of all, it's not presented as a theory of defense instruction. I haven't received any instruction that says "the defense claims," or this is the defense's theory; although, you have argued that well, and I am sure you will again.

Secondly, although this shows up in the pattern, it is not a statement of law. It's

an argument. That's all it is. It's a principle that if the elements are not proven beyond a reasonable doubt the defendant is not guilty. That's the law. If being present is all there is, just being there and absolutely nothing else, circumstantial or otherwise, then I am sure you are going to go argue that, and there will be a finding of not guilty.

Frankly, I think it's misleading and confusing. I think that some of the—some of the language is designed about an accessory situation where several people are together and someone is claiming, well, I didn't know what was going on, and someone else says, well, you have to have, or you participated somehow; but, at any rate, I don't think you lose anything by us leaving it out; and I think we adequately cover the law by saying the state has to prove the elements beyond a reasonable doubt, each and every one of them; so you are sure going to be able to argue this.

I will put it in the court file that you offered it and the Court rejected it.

[¶ 16] We agree with the district court's reasoning and conclude that there was no error in refusing the offered instruction under the circumstances of this case because Burkhardt's rather simple contention that he was merely present does not merit a special instruction, as well as because the evidence adduced at trial did not warrant the instruction.

[¶ 17] Burkhardt also contends that his attorney was ineffective for not crafting some other "theory of defense" instruction in light of the district court's offer to consider a revised instruction. This contention is not supported by cogent argument (e.g., what other instruction defense counsel might have offered under these circumstances) or pertinent authority (e.g., a case where failure to offer a theory of defense instruction constitutes plain error).

## Other Instruction Issues

[¶ 18] The instruction issues discussed below were not raised in the district court in the form of offered instructions. Therefore, they are subject to our general standard of review with respect to instruc-

tions, as well as the application of the plain error rule. The plain error rule requires that an appellate court make a series of findings: (1) the record must clearly present the incident; (2) defendant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way; and (3) that defendant was denied a substantial right resulting in material prejudice to him. *Schmidt v. State,* 2001 WY 73, ¶ 24, 29 P.3d 76, ¶ 24 (Wyo. 2001).

[¶ 19] Relying on *Brett v. State,* 961 P.2d 385, 389–91 (Wyo.1998), Burkhardt contends that the district court erred in failing to provide the jury with the statutory definition of the word "deprive." Wyo. Stat. Ann. § 6–3–401(a)(ii) (LexisNexis 2005) provides:

(ii) "Deprive" means:

(A) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation; or

(B) To dispose of the property so as to make it unlikely that the owner will recover it.

However, § 6–3–401(a) and (a)(iii) provides that that definition applies to "this article," and by "this article" the statute means "W.S. 6–3–401 through 6–3–411." Burglary is, of course, not in the same article as larceny. Burkhardt also contends that the "larceny" he committed wasn't a "felony" because there was no proof that the value of the property exceeded $500.00. Wyo. Stat. Ann. § 6–3–402(c) (LexisNexis 2003) (since amended to $1,000, § 6–3–402(c) (LexisNexis 2005)). However, burglary does not have a dollar limit akin to that of the larceny statute (see footnote 1).

[¶ 20] The other instruction issues raised by Burkhardt do not constitute error, much less plain error.

## Abuse of Discretion in Sentencing

[¶ 21] Our standard of review in this regard is well known:

When imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes. *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo.1993); *Griebel v. State*, 763 P.2d 475, 477 (Wyo.1988). We will not disturb a sentencing decision absent a clear abuse of discretion. *Jones v. State*, 771 P.2d 368, 371 (Wyo.1989). In sentencing, due process provides a right to be sentenced only on accurate information. *Mehring*, 860 P.2d at 1117; *Clouse v. State*, 776 P.2d 1011, 1014 (Wyo.1989). On appeal, the defendant must demonstrate that the trial court relied upon the statements in sentencing to prevail. *Mehring*, at 1115. "However, when no objection is made concerning the consideration of a particular factor, review is necessarily confined to a search for plain error. Plain error, as we have often stated, occurs when the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Hornecker v. State*, 977 P.2d 1289, 1291 (Wyo.1999); *see also Craver v. State*, 942 P.2d 1110, 1115 (Wyo.1997). Victim impact information about other crimes or convictions unrelated to the particular crime for which sentence is about to be imposed is permissible. *Mehring*, 860 P.2d at 1116–17. "W.R.Cr.P. 32(a) specifically permits information about the prior criminal record of the defendant and his characteristics to be considered by the trial court before imposing sentence. In evaluating character, the trial court, in exercising its discretion, may consider a broad range of reports and information." *Id.; see also Christy v. State*, 731 P.2d 1204, 1207–08 (Wyo.1987). Evidence of prior criminal activity is "highly relevant to the sentencing decision" and may be considered by the sentencing court despite the fact that no prosecution or conviction may have resulted. *Mehring*, at 1117.

*Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, ¶ 9 (Wyo.2004); *also see Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, ¶ 7 (Wyo.2003).

[¶ 22] Burkhardt objected to the district court considering information to the effect that the jail had informed the prosecutor that they could not handle Burkhardt in the local jail and did not want him to receive a split sentence. The prosecutor also argued that Burkhardt had not taken responsibility for his behavior; called the district court's attention to Burkhardt's prior criminal record with accuracy; referred to Burkhardt as a "petulant child" who "has had everyone wait on him"; and characterized Burkhardt as a person who "when things don't go his way, he pouts, he acts out, and he apparently violates the law."

[¶ 23] After Burkhardt was permitted to address the presiding judge at length, the district court pronounced sentence, which included these remarks:

Mr. Burkhardt, the Court finds, and even listening to your statement now, I find that your life to this point is characterized by a significant lack of self discipline and by an attitude that many of your problems were created by other people than yourself; and until you cross those gaps and understand that it's your own lack of self discipline that creates a problem and that you need to be self disciplined, I don't have any hope that probation would be successful at all in your case.

I recognize that you are young and that this is a fairly minor property crime. Of course, it wasn't minor to the victim or to the community or to law enforcement officers or to that witness who spoke up.

I also recognize, however, that the Court needs to craft a sentence that is sufficient to give you an incentive to develop that self discipline I talked about, and so that's exactly what I am going to do.

It's the judgment and sentence of the Court that you serve a term in the Wyoming State Penitentiary of three to seven years. I am going to recommend to the warden that you participate in the boot camp.

If you can fully complete the boot camp, I will reduce your sentence. You won't serve the rest of your time. But you have a great deal of incentive to successfully complete the boot camp. If you don't successfully complete boot camp, then you will just serve your sentence.

[¶ 24] That sentence was entered by the district court on March 1, 2004. On September 22, 2004, based upon Burkhardt's successful completion of boot camp, the district court reduced his sentence, suspending the remainder of his prison term and placing him on probation for five years.

[¶ 25] In his brief, Burkhardt relies in significant part on the United States Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (applying rule expressed in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). In *Blakely,* the Supreme Court held that the rule announced in *Apprendi* applied to Blakely's case because the trial court made a factual finding that the defendant acted with "deliberate cruelty." Based on that finding, the trial court imposed an enhanced sentence. In *Blakely,* the Supreme Court iterated that fact-finding with respect to such sentence enhancements must be made by a jury under the "beyond a reasonable doubt" standard. For much the same reasons as those set out in *Blakeman v. State,* 2005 WY 13, ¶ 5, 105 P.3d 472, ¶ 5 (Wyo.2005) and *Brown v. State,* 2004 WY 119, ¶¶ 9–15, 99 P.3d 489, ¶¶ 9–15 (Wyo.2004), we conclude that *Blakely* and *Apprendi* have no application to the circumstances of this case because the district court did not enhance Burkhardt's sentence beyond that provided for in the operative criminal statute.

[¶ 26] Beyond that, Burkhardt's contentions that the district court took into account improper information in imposing sentence (e.g., Burkhardt's "attitude" and "lack of self discipline") are not supported by cogent argument or pertinent authority. It is apparent to this Court, based on a complete review of the record, that the district court did not have before it, or otherwise consider, improper information when it imposed the sentence.

## CONCLUSION

[¶ 27] The evidence was sufficient to sustain the conviction. The district court's refusal of the instruction offered by Burkhardt was not error, and the jury was otherwise properly instructed. The district court's sentence was within its sound discretion and was based on information properly before the court. Therefore, the judgment and sentence of the district court are affirmed.