2007 WY 102

**Michael Dale ISELI, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

No. 06–181.

Supreme Court of Wyoming.

June 26, 2007.

Representing Appellant: D. Terry Rogers, Interim State Public Defender; Donna D. Domonkos, Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel. Argument by Mr. Westling.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James Michael Causey, Assistant Attorney General. Argument by Mr. Causey.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from the appellant's convictions for interference with a peace officer and causing bodily injury to a peace officer, in which the appellant raises several issues concerning jury instructions. We conclude that the instructions as given adequately informed the jury as to the law and the appellant's theory of defense, and we, therefore, affirm.

## ISSUES

[¶ 2]  1.  Did the district court err in instructing the jury as to the elements of Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2005)?

2.  Did the district court err in refusing to give an adequate theory-of-defense instruction?

3.  Did the district court err in refusing to give the appellant's profferred self-defense instructions?

## FACTS

[¶ 3]  Investigator Davis of the Natrona County Sheriff's Office (NCSO) was aware that several felony warrants existed authorizing arrest of the appellant.  Davis was also aware that the appellant might be en route from New Mexico to Wyoming to see his wife.  At approximately 11:30 a.m., on August 28, 2005, while off duty, Investigator Davis was informed by NCSO Corporal Frimml that the appellant's wife had told authorities that the appellant was supposed to meet her at Edness Kimball Wilkins Park in Natrona County between noon and 1:00 p.m. on that date.  Given the short time to prepare an arrest plan, Davis drove to the park in an unmarked car, and in civilian clothes, but with a badge on a chain around his neck, outside his shirt.  Uniformed officers in marked patrol vehicles also approached the park:  Corporal Frimml and Deputy Arnold in one, Deputy Walters in another, and Deputy Means in yet another.

[¶ 4]  Shortly after arriving at the park, Davis observed the appellant's wife get out of her car and tie her dog to a fence post. Davis had planned to intercept the appellant before he reached his wife, but the appellant arrived, parked his vehicle, and walked over to his wife, lying down on the ground next to her.  Davis parked behind the appellant's

vehicle to prevent escape, radioed the other officers that the appellant was already there, and began walking toward the couple with his service revolver drawn but down by his side.

[¶ 5] As he walked toward the appellant, Davis verbally identified himself as a deputy sheriff and stated that he had a warrant for the appellant's arrest. Davis ordered the appellant to remain on the ground, but the appellant jumped to his feet, looked at Davis, and then yelled at his wife, "I can't believe you turned me in." While continuing to yell at his wife, the appellant began to walk toward the vehicles. When Davis followed, the appellant turned and walked back toward his wife, threw a beer bottle at her, and then turned and ran toward a restroom and the park's main road. Davis gave chase, repeating that the appellant was under arrest. Just after the appellant crossed the road, Davis caught up with and tackled him. As they hit the ground and began to struggle, the appellant struck Davis in the sides and legs. The chain holding Davis's badge was broken and the appellant's glasses were knocked from his face. The appellant grabbed Davis's hands and arms, and then began pinching Davis's leg. When Davis did not let go of him, the appellant grabbed Davis's throat with his left hand.

[¶ 6] When Davis felt that the appellant was trying hard to choke him, Davis began to fear for his life, so he struck the appellant on the side of his head with the rubber butt of his pistol. That had no effect, so he struck the appellant again, this time with the pistol's metal barrel. The appellant then released his hold on Davis, rolled away, and began again to run away.

[¶ 7] Corporal Frimml, and Deputies Arnold and Means, had by that time arrived on the scene. They identified themselves as peace officers, Deputy Means doing so by way of the public address system in his patrol vehicle. The appellant looked back at the deputies, but continued to run. The appellant slowed down when Corporal Frimml pumped a shell into his shotgun, allowing Deputy Arnold to catch up with and tackle the appellant. The appellant even then continued to resist, refusing to place his hands behind his back to be handcuffed. He did so only after Corporal Frimml placed his foot on the appellant's back to keep him on the ground. He was then handcuffed, placed in a patrol vehicle, and transported to jail.

[¶ 8] The appellant was charged with interference with a peace officer, in violation of Wyo. Stat. Ann. § 6–5–204(a) (LexisNexis 2005) and causing bodily injury to a peace officer, in violation of Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2005). Those sections read as follows:

(a) A person commits a misdemeanor punishable by imprisonment for not more than one (1) year, a fine of not more than one thousand dollars ($1,000.00), or both, if he knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties.

(b) A person who intentionally and knowingly causes or attempts to cause bodily injury to a peace officer engaged in the lawful performance of his official duties is guilty of a felony punishable by imprisonment for not more than ten (10) years.

The misdemeanor count alleged that the appellant interfered with Corporal Frimml and Deputy Arnold. The felony count alleged that the appellant caused bodily harm to Investigator Davis.

### STANDARD OF REVIEW

[¶ 9] We reiterated our standard for the review of jury instructions in *Adams v. State,* 2003 WY 152, ¶ 4, 79 P.3d 526, 529–30 (Wyo. 2003):

It is also well established that a trial court has a duty to instruct a jury on the general principles of law applicable to the case at issue. A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found. Instructions must be considered as a whole, and individual instructions, or parts of them, should not be singled out and considered in isolation. *Ogden v. State,* 2001 WY 109, ¶ 8, 34 P.3d 271, [274] (Wyo. 2001); *Coburn v. State,* 2001 WY 30, ¶ 9,

20 P.3d 518, [520] (Wyo.2001); *Merchant v. State,* 4 P.3d 184, 190 (Wyo.2000).

Jury instructions shall not be ruled defective absent a showing that the instructions confused or misled the jury as to the proper principles of law and prejudiced the defendant. *Lane v. State,* 12 P.3d 1057, 1061 (Wyo.2000). Prejudicial error must be demonstrated, and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Wilson v. State,* 14 P.3d 912, 916 (Wyo.2000). Further, a failure to instruct properly on an element of a crime does not constitute plain error where evidence of the defendant's guilt is overwhelming. *Id.*

[¶ 10] Specifically with regard to what has come to be known as the "theory of defense" instruction, we said the following in *Holloman v. State,* 2002 WY 117, ¶¶ 15–16, 51 P.3d 214, 219 (Wyo.2002) (footnote omitted):

Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State,* 474 P.2d 127, 129 (Wyo. 1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State,* 833 P.2d 486, 490 (Wyo.1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State,* 704 P.2d 1300 (Wyo. 1985). Fundamentally, the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp,* 833 P.2d at 490.

As *Bouwkamp* explained, "[t]heory of defense instructions are to be derived from and address criminal defenses provided for by statute or acknowledged by this court." *Id.* It further noted "common-law defenses are retained unless otherwise provided by this act." Id. (quoting Wyo. Stat. Ann. § 6–1–102(b)). Additionally, this Court has discussed acceptable defenses, notably in *Keser v. State,* 706 P.2d 263, 269 (Wyo.

1985). *See also* 1 Paul H. Robinson, *Criminal Law Defenses* § 21, at 70 n. 1 (1984); 1 Charles E. Torcia, *Wharton's Criminal law* § 39 (15th ed.1993).

Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State,* 736 P.2d 739, 745 (Wyo.1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State,* 966 P.2d 941, 944 (Wyo.1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.* The refusal to allow an instruction requested by the defendant when due process requires the defendant's instruction be given is reversible error per se. *Id.*

*See also Burkhardt v. State,* 2005 WY 96, ¶ 12, 117 P.3d 1219, 1223–24 (Wyo.2005); *Olsen v. State,* 2003 WY 46, ¶ 146, 67 P.3d 536, 590 (Wyo.2003).

However, we have also noted that "[n]ot every instruction must be given simply because there is a claim that it incorporates a theory of the case." *Wilkening v. State,* 922 P.2d 1381, 1383 (Wyo.1996). A trial court may properly refuse to give a proposed instruction if it is erroneous, confusing, argumentative, or if the instruction unduly emphasizes one aspect of the case, the law, or the defendant's version of the events. *Madrid v. State,* 910 P.2d 1340, 1346 (Wyo.1996); *Jansen v. State,* 892 P.2d 1131, 1140 (Wyo.1995); *Virgilio v. State,* 834 P.2d 1125, 1128 (Wyo.1992). Additionally, "instructions not based on the evidence can be properly refused." *Chavez–Becerra v. State,* 924 P.2d 63, 67 (Wyo. 1996).

*Farmer v. State,* 2005 WY 162, ¶ 23, 124 P.3d 699, 707 (Wyo.2005). As with other instructions, the district court must exercise discretion in determining what, if any, theory-of-the-case instructions are to be given:

We first dispose of Coburn's contention that it was within his "exclusive province" to decide which instructions relating to his

self-defense theory should be given to the jury. He fails to cite any authority to support this proposition because the law is contrary. "It is within the court's discretion to present its own instruction or instructions covering the defendant's theory of the case." *Baier v. State*, 891 P.2d 754, 757 (Wyo.1995) (quoting *Sanchez v. State*, 694 P.2d 726, 729 (Wyo.1985)). Indeed, the trial court is charged with the duty to present instructions on the law that apply to the issues that were raised by the evidence. *Id.* at 756.

*Coburn v. State*, 2001 WY 30, ¶ 11, 20 P.3d 518, 520–21 (Wyo.2001).

## DISCUSSION

### *Did the district court err in instructing the jury as to the elements of Wyo. Stat. Ann. § 6–5–204(b) (LexisNexis 2005)?*

[¶ 11] The appellant's theory of defense was that he did not know Investigator Davis was a peace officer at the time of the incident, and that, therefore, he could not be guilty of knowingly causing bodily injury to a peace officer. The evidence presented in support of that theory was the appellant's own testimony. Specifically, he testified that Davis did not look like a peace officer, that he did not hear Davis identify himself as a peace officer because his wife's dog—a Rottweiler—was barking so loudly as Davis approached, and that he panicked when he saw that Davis had a gun.

[¶ 12] The appellant proffered two instructions directed to the "knowingly" element of the charges. The first, proposed instruction "A," explained his theory of defense:

### DEFENDANT'S PROPOSED INSTRUCTION NO. A

The Defendant's position is that he did not know Investigator Davis was a peace officer at the time of the attempted arrest in this case and did not learn that Investigator Davis was a peace officer until after the events that gave rise to the assault on a peace officer were concluded.

Under the law, a person is not guilty of the charge of assault on a peace officer,

resisting arrest or interference with a peace officer unless the State proves beyond a reasonable doubt that the Defendant knew that the other person was a peace officer, along with all the other elements of the charge.

The second, proposed instruction "F," was a revised elements instruction:

### DEFENDANT'S PROPOSED INSTRUCTION NO. F

The elements of the crime of Assault on a Peace Officer, as charged in Count 1 of this case, are:

1. On or about the 28th day of August, 2005

2. In Natrona County, Wyoming

3. The Defendant, Michael Dale Iseli

4. Intentionally and knowingly caused bodily injury to a peace officer

5. ***Knowing the person he was injuring was a peace officer***

6. While that peace officer was engaged in the lawful performance of his official duties.

. . . .

(Emphasis added.)

[¶ 13] The district court refused both of these instructions, giving somewhat different versions instead. The elements instruction read as follows:

### INSTRUCTION NO. 11

The elements of the crime of Assault on a Peace Officer, as charged in Count 1 of this case, are:

1. On or about the 28th day of August, 2005

2. In Natrona County, Wyoming

3. The Defendant, Michael Dale Iseli

4. Intentionally and knowingly caused bodily injury to a peace officer

5. While that peace officer was engaged in the lawful performance of his official duties.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable

doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

[¶ 14] The theory-of-defense instruction given by the district court read as follows:

### INSTRUCTION NO. 13

Defendant contends that he did not know Investigator Davis was a peace officer at the time of the attempted arrest in this case and did not learn that Investigator Davis was a peace officer until after he was arrested by Deputy Arnold and Frimml.

Therefore, Defendant contends he did not intentionally and knowingly cause bodily injury to a peace officer.

[¶ 15] In rejecting the appellant's proposed instruction "F," the district court relied upon *Mueller v. State*, 2001 WY 134, ¶ 12, 36 P.3d 1151, 1157 (Wyo.2001), in which this Court approved usage of an instruction identical to Instruction No. 11 in a case with facts similar to those *sub judice*. We do not find this to have been an abuse of discretion, especially because the district court also gave Instruction No. 13, which basically duplicated the appellant's proposed instruction "A." Citing *Farmer*, ¶ 24, 124 P.3d at 708, the district court also noted that the statement in the appellant's proposed instruction "A" that the State was required to prove the knowingly element beyond a reasonable doubt was redundant and, therefore, unnecessary because Instruction No. 11 already informed the jury that the State had to prove every element of the crime beyond a reasonable doubt.

[¶ 16] We conclude that the instructions as given accurately informed the jury as to the elements of the crime and the State's burden of proof, and provided the legal basis from which the appellant could argue that he was not guilty because he did not know that Investigator Davis was a peace officer.

### *Did the district court err in refusing to give an adequate theory-of-defense instruction?*

[¶ 17] In addition to proposed instruction "A" discussed above, the appellant also offered proposed instruction "B," which reads as follows:

### DEFENDANT'S PROPOSED INSTRUCTION NO. B

It is lawful for a person being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force, which would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury which appears to be imminent.

[¶ 18] The appellant contends that by refusing to give his proposed instructions "A" and "B," the district court effectively denied him a theory-of-the-case instruction. His premise is that, not knowing Davis was a peace officer, he had the right to defend himself. We agree with the district court even though, at first blush, a self-defense instruction might appear logical under the circumstances of this case. In refusing to give these instructions, however, the district court correctly discerned that a self-defense instruction was improper under any version of the facts. Consider the possibilities: If the appellant knew Davis was a peace officer, he had no right to defend himself against arrest, so no self-defense instruction was warranted. If the appellant did not know Davis was a peace officer, he cannot be guilty of the charged crime, so no self-defense instruction was warranted. If Davis had used excessive force in making the arrest, the appellant would have been entitled to defend himself, but there was no evidence suggesting the excessive use of force, so no self-defense instruction was warranted. *See Ortega v. State*, 966 P.2d 961, 966 (Wyo.1998).

### *Did the district court err in refusing to give the appellant's proffered self-defense instructions?*

[¶ 19] It is difficult to distinguish this issue from the issue just discussed, except that

it is directed at the district court's refusal to give the appellant's proposed instructions "C," "D," and "E," all of which are also self-defense instructions. These proposed instructions read as follows:

### DEFENDANT'S PROPOSED INSTRUCTION NO. C

You are instructed that there may be situations that police activities are so provocative and resistance so understandable that it can only be concluded that the police were not engaged in the lawful performance of their official duties and that such conduct by the officer may give rise to [the] right of self-defense.

### DEFENDANT'S PROPOSED INSTRUCTION NO. D

Before a defendant may be convicted of any crime, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense.

### DEFENDANT'S PROPOSED INSTRUCTION NO. E

You are instructed that Defendant's self-defense claim is not precluded merely by the fact that Investigator Davis is a peace officer.

In fact Investigator Davis's status as a peace officer is irrelevant to your consideration of the reasonableness of the Defendant's self-defense claim if the Defendant was unaware of Investigator Davis's employment status.

[¶ 20] As with proposed instructions "A," "B," and "F," it was not an abuse of discretion for the district court to refuse to give these instructions. There was no evidence to support proposed instruction "C." Proposed instruction "D" is a misstatement of the law because self-defense is not available to an arrestee where the peace officer has not used excessive force; ergo, the State need not disprove the defense in that situation. Proposed instruction "E" was refused by the district court for the same reasons as the others, as set forth above. While we agree with that conclusion, we will also add that "E" is not supported by any cited authority, and it is sufficiently confusing that it likely would have confused the jury.

### CONCLUSION

[¶ 21] The district court did not abuse its discretion in refusing the appellant's proposed jury instructions. Affirmed.